Hammond, trustee, *vs.* Stovall.

---

No. 84.—W. L. HAMMOND, trustee, plaintiff in error, *vs.* JAMES M. STOVALL, defendant.

[1.] Four years' possession of a chattel in another State, will not confer a title, by virtue of the 4th section of our Statute of 1822, as against a judgment lien on said property obtained in this State—the chattel having been removed before the judgment could be enforced.

[2.] Where a negro slave, subject to the lien of a judgment, in this State, was taken into the State of South Carolina and sold to an innocent purchaser, where he remained for more than four years : *Held,* that such purchaser did not acquire title by virtue of the Statute of Limitations of that State, as against the lien of the said judgment; and that as the State of South Carolina has already made a similar decision, as to a slave taken from this into that State, the comity of the two States is not violated

by a judgment which holds the said slave liable to seizure upon the execution, on returning into this State.

Claim, in Franklin Superior Court. Tried before Judge JACKSON, October Term, 1854.

In 1841, John R. Stanford obtained, in Franklin Superior Court, a judgment against Job Hammond for $142$\frac{00}{100}$, with interest. The defendant appealed and gave James M. Stovall as security; and the plaintiff again recovering, the money was made out of Stovall, and he obtained control of the *fi. fa.* against Job Hammond. Pending the appeal in 1842, Hammond conveyed to South Carolina, a negro belonging to him named Sandy, and there sold him to one Cresswell, from whom, through several hands, the negro was conveyed, by purchase, to Wm. L. Hammond, the plaintiff in error, as trustee of a marriage settlement. In 1851, the Sheriff of Franklin County, finding the negro Sandy in said County, levied said *fi. fa.* on him, at the instance of Stovall; and claim was interposed by Wm. L. Hammond, trustee as aforesaid.

The question made upon the trial was, whether the claimant was protected by his possession of the negro in South Carolina, (he and those under whom he claimed having had such possession in South Carolina, for about nine years,) either by the Act of this State or of South Carolina, by which a purchaser of personal property is protected from the lien of judgments against his vendor, after four years' peaceable possession (in South Carolina five years).

The Court held that the property was still subject to the lien of the judgment; and on this decision, error is assigned.

AKIN, representing VANDUZER, for plaintiff.

COBB & HULL, for defendant.

*By the Court.*—STARNES, J. delivering the opinion.

The simple question presented in this case is, whether or not

Hammond, trustee, *vs.* Stovall.

a negro slave, on whom there was a judgment lien resting in this State, but who, before the same was levied, had been removed into the State of South Carolina, where he remained in the possession of purchasers, in good faith, for more than four years, can be levied on and sold under execution issued upon said judgment, if he be brought back subsequently, into this State.

[1.] For the plaintiff in error, it is urged, that by the 4th section of our Act of 1822, it has been enacted, that "no judgment shall be enforced by the sale of any real or personal estate, which the defendant may have sold and conveyed to a purchaser, for a valuable consideration, and without actual notice of such judgment: *Provided* such purchaser, or those claiming under him by such sale and conveyance, have been in peaceable possession of such real estate for seven years, and of such personal estate four years, before the levy shall have been made thereon"; that this Statute makes no exceptions to the rule which it prescribes; that it is not the policy of our Courts to add exceptions to the same, and that therefore, the case at bar should not form an exception.

We might recognize all this to be true, perhaps, and so recognizing it, feel that we were carrying the intention of the Legislature into effect, if it were a case where the claim in lien of the plaintiff in execution could have been asserted when the property had been removed beyond the State—if by any proceeding in South Carolina or elsewhere, it could have been carried into effect as against this slave. But in the nature of things, this could not be. The judgment possessed no lien there; and therefore, it is, we think, that the Legislature designed that this Statute should have application only where the property had remained within the State.

[2.] But it was also argued, that by the law of South Carolina, the plaintiff in error, by possession and lapse of time, had acquired a title to this slave, under and by virtue of the Statute of Limitations there in force, and that the comity which should prevail between coterminous States, requires the Courts of Georgia to recognize and protect such title. That

if title were not thus acquired by lapse of time ; yet, that inasmuch as the judgment lien asserted by the defendant in error, was inoperative in South Carolina, the purchase of the slave there, in good faith, vested a perfect title in such purchaser ; and the same comity requires us to respect that title.

As to what was said of the Statute of Limitations, we remark, that neither the plaintiff in error nor those under whom he claims, can derive title from that source, as against the claim of the defendant in error, for the simple reason, that his claim (a judgment lien) was of a character which could not be enforced in South Carolina, against this slave, by action of trover or any other of those actions which are operated upon by the Statute of Limitations.

The other ground is of more importance, and involves the serious consideration, whether or not, from respect to the comity of contiguous nations, and to avoid a conflict of laws, the Courts of such nations should hold, that whenever property on which judgment liens rest is carried out of the State where the judgment is obtained, into a neighbor's territories, and title to it is there obtained by innocent purchasers, these liens are forever extinguished, although the property may return whence it was removed.    This question is of especial importance in the slave-holding States of our Union, where slaves constitute so large a portion of our wealth; a species of property which, in the nature of things, may be so easily removed from one State into another.

To answer this question in the affirmative, we fear, would be to hold out dangerous encouragments to dishonest debtors. Still, whatever we might think of the policy of the measure, if our sister States were to propose it, or their Courts had adopted the doctrine, it would operate with something like an approximation to equality of right, and we should be prepared, perhaps, to meet them in the same spirit.

But so far as the State of South Carolina is concerned, her highest Judicial tribunal has determined this matter—has decided that a citizen of Georgia, under similar circumstances, could not be protected in his title to a slave, acquired in good

faith in the latter State, against a judgment lien obtained in South Carolina—has anticipated the question of comity, and declared, not only that such a decision "holds out no conflict between the laws of the two States," but that "harmony, not discord, will follow the principles which they have assumed." *Richards vs. Towles*, (3 *Hill R.* 346.)

Nothing remains for us but to adopt the same view of the subject, where the case arises, as this does, between the laws of that and our own State.

Let the judgment be affirmed.